Lola KOUBA, aka Lola Hogan, individually and on behalf of all others similarly situated, Plaintiff,

United States Equal Employment Opportunity Commission, Plaintiff in Intervention,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

Civ. No. S–77–99 LKK.

United States District Court, E. D. California.

Sept. 3, 1981.

As Corrected Sept. 18, 1981.

150

Kalvin M. Grove, Chicago, Ill., Joseph J. DeHope, Jr., Sacramento, Cal., for defendant Allstate Ins. Co.

O. J. Ramsey, Sacramento, Cal., for Kouba.

Leroy Clark, E.E.O.C., Washington, D. C., John M. Rea, E.E.O.C., San Francisco, Cal., for E.E.O.C.

Nancy Davis, Judith E. Kurtz, San Francisco, Cal., for Equal Rights Advocates.

## OPINION AND ORDER

KARLTON, District Judge.

In the recent case of *County of Washington v. Gunther,* —— U.S. ——, 101 S.Ct.

2242, 68 L.Ed.2d 751 (1981), the Supreme Court of the United States initiated its analysis of the questions presented when a plaintiff alleges unequal pay for equal work in an action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(h). In its conclusion the Court emphasized that it did ". . . not decide in this case the precise contours of lawsuits challenging sex discrimination in compensation under Title VII." At ——, 101 S.Ct. at 2254, 68 L.Ed.2d at 767. Elsewhere the Court acknowledged how much was left for another day. "We are not called upon in this case to decide whether respondents have stated a prima facie case of sex discrimination under Title VII [citation omitted], or to lay down standards for the further conduct of this litigation." *Id.* at n.8. Finally, although the Court noted that "we do not decide in this case how sex based wage discrimination litigation under Title VII should be structured to accommodate the fourth affirmative defense of the Equal Pay Act," *Id.* at ——, 101 S.Ct. at 2249, 68 L.Ed.2d at 761, it recognized that "incorporation of the fourth affirmative defense could have significant consequences for Title VII litigation." *Id.*, at ——, 101 S.Ct. at 2248, 68 L.Ed.2d at 760. In this case this Court is faced with the uncomfortable duty of exploring those very issues which the Supreme Court reserved. For this Court, this case is the other day.

# I

## STATEMENT OF THE CASE

Plaintiff, Lola Kouba, instituted this action against Allstate Insurance Company alleging that the defendant's method for setting its "monthly minimum" for new sales agents/trainees discriminated against women in violation of Title VII. Subsequently the Equal Employment Opportunity Commission ("EEOC") intervened as a party plaintiff.[1] Plaintiff now seeks partial summary judgment on the issue of liability, class certification, preliminary injunctive relief and the setting of prejudgment interest.[2]

Plaintiffs and defendant filed extensive affidavits, depositions, interrogatories and answers to requests for admissions which provide the factual matrix for this decision.[3]

Plaintiff Kouba was employed by Allstate on November 19, 1974, and left its employ approximately one year thereafter. As with all new sales agents, Allstate established a "monthly minimum" for plaintiff. This amount represents the actual salary paid to all new sales agents during the first three months of their employment by Allstate during which they are trained for their new position. Subsequent to the training period, the monthly minimum constitutes a minimum compensation that the agents will be paid by Allstate regardless of sales performance. There is no ceiling on the amount of money a sales agent may actually earn once in the field (i. e. selling). That amount is based upon a Compensation Agreement which relates earnings to compensation for products sold, renewal compensation, and for certain new employees, a so-called career supplement. Plaintiff does not in this lawsuit challenge the new, renewal or career supplement compensation. Rather, this litigation addresses the month-

1. Unless otherwise indicated, when this Opinion refers to plaintiff it refers to both plaintiff KOUBA and the EEOC.

2. The published Opinion will be limited to the issue of summary judgment. The federal courts are being overwhelmed by published matter and it is my firm belief that published opinions should be limited to novel matters, knotty legal problems, matters of great public importance, great public interest or where the court wishes to criticize existing law. The dis-position of the other motions do not, in my opinion, warrant publication.

3. The facts which appear in this portion of the Opinion and elsewhere are those which are undisputed. Where facts are contested, that dispute is noted and examined to determine if the disputed fact is material. "A material fact is one which may affect the outcome of the litigation." *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 282 (9th Cir. 1979).

ly minimum which the agent will receive regardless of sales performance.

The monthly minimum is set through a series of internal steps.[4] The company is divided essentially into three supervisorial levels—district sales managers, field sales managers, and regional sales managers. The district sales manager has the initial responsibility for recommending to the field sales manager what the monthly minimum should be for an agent who is hired by the district. The ultimate decision regarding an agent's monthly income is determined by the regional sales manager. Although the regional office has the authority to disapprove a recommended monthly minimum, it is rarely exercised.

The monthly minimum is set by application of criteria established by written company directive to facts obtained by the District Sales Manager from an application form, personal interview, and checking with former employers. The directives provide that the monthly minimum "should be commensurate with the individual's ability, experience and current salary situation."[5] By "current salary situation" is meant the salary the applicant received in the employment immediately preceding hire by Allstate.

Although facially neutral, the result of the system has been that for the period analyzed by plaintiffs (each calendar year commencing in 1973 through the first half of 1979), Allstate has set a mean (average) monthly minimum which results in a differentiation between men and women sales agents/trainees. Plaintiff has attached to her Motion for Summary Judgment the affidavit of a professor of statistics and management science, fully qualified to render such opinions, which analyzes those results. It was the expert's conclusion that "the differences between male agents' mean (average) and female agents is about seven standard deviations (or percent scores) in every year from 1973 through 1979."[6]

Defendant does not challenge either the statistical facts or the expert's conclusion that these deviations cannot be attributable to chance.[7] Rather, defendant challenges the inference which plaintiffs draw, namely that the deviations noted are the result of prohibited sex discrimination. Defendant asserts that the "monthly minimum" at issue was "assessed only after a full consideration of legitimate non-sex based factors" including prior salary, and that although this full consideration has resulted in an average deviation between men and women, it has also resulted in some women being paid more than some men. Moreover, it notes that while women as a group have received lower average monthly minimums than men, those minimums have generally been set higher than their prior earnings, whereas monthly minimums for men have tended to be lower than their prior earnings.

Neither party has provided this Court with evidence relating to how often, once agents are in the field, their earned compensation is greater or less than the amount guaranteed under the monthly minimum.

4. Since 1965 Allstate has made no change in the method of setting agent trainee monthly minimums with one exception. In December 1978, the company set a minimum amount of $1,000 as a starting monthly minimum. Before that date the only minimum that existed was the legal minimum wage at the time of hire.

5. During the course of discovery defendant revealed a fourth consideration—education.

6. In *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), and *Hazelwood School District v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977), the Supreme Court recognized that such deviations become significant "if the difference between the expected value and the observed number is greater than two or three standard deviations...." *Castaneda v. Partida*, 430 U.S. at 497 n.17, 97 S.Ct. 1281 n.17, *quoted in Hazelwood School District v. United States*, 433 U.S. at 308 n.14, 97 S.Ct. at 2742 n.14.

7. "If the defendants in a Title VII suit believe there to be any reason to discredit plaintiffs' statistics ... the opportunity to challenge them is available ... They may endeavor to impeach the reliability of the statistical evidence [or] they may offer rebutting evidence, ..." *Dothard v. Rawlinson*, 433 U.S. 321, 338, 97 S.Ct. 2720, 2731, 53 L.Ed.2d 786 (1977) (Rehnquist, J. concurring).

Defendant does concede that the minimum "serves as a cushion for agents in recognition that, during the early years as agents, they will have peaks and valleys in sales." Finally, as to Kouba herself, it appears to be uncontested that at no time during the five months she was in the field did her actual compensation exceed the monthly minimum.

## II

### BURDENS OF PROOF, BURDENS OF PERSUASION, AND SUMMARY JUDGMENT

■ Much of the history of Title VII litigation has required the courts to "address ... the nature of the evidentiary burden placed upon the defendant in an employment discrimination suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 249–50, 101 S.Ct. 1089, 1092, 67 L. Ed.2d 207 (1981). From *Griggs v. Duke Power Company*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), through *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) to *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) to *Texas Department of Community Affairs v. Burdine, supra*, the essential issues have been discussed in terms of the allocation of various burdens of proof.[8] The practice of addressing Title VII issues under the rubric of "burdens of proof" and "shifting burdens of proof" had led to some significant confusion. This confusion arose not because of some intrinsic difficulty in the mode of analysis but because these terms are instances of "lamentable ambiguity of phrase and confusion of terminology under which our law has [ ] long suffered." IX Wigmore on Evidence

271 (3d ed. 1940). As Wigmore exhaustively points out, the phrase has at least two possible meanings depending upon the context used. Thus, the phrase "burden of proof" may refer to the burden of persuasion on an issue tendered to the ultimate trier of fact (*see* IX Wigmore, *supra*, § 2485), or it may refer to the duty of producing evidence to the judge sufficient to justify presentation of the issue to the trier of fact. *Id.* at § 2487 and *see Texas Department of Community Affairs v. Burdine*, 450 U.S. at 254 n.7, 101 S.Ct. at 1094 n.7.[9]

Because of this ambiguity, various courts had mistakenly thought that the process of shifting burdens of proof in the context of Title VII cases referred to the burden of persuasion rather than the burden of producing evidence. Recently the United States Supreme Court dispelled the confusion.

■ In *Burdine, supra*, the Court made clear that the shifts in the burden of proof recognized in *McDonnell Douglas*, referred to the obligation of producing evidence and not to the burden of persuasion which "never shifts." 450 U.S. at 253, 101 S.Ct. at 1093. Although this analytical mode has been particularly explored in Title VII cases, as Justice Powell recently reminded us, the "evidentiary relationship between the presumption created by a prima facie case and the consequential burden of production placed on the defendant is a traditional feature of the common law." *Texas Department of Community Affairs v. Burdine*, 450 U.S. at 255 n.8, 101 S.Ct. at 1094 n.8.

■ In the context of a motion for summary judgment (whether partial or full) "assessing the burden of production helps the judge determine whether the litigants

---

**8.** This observation is not intended to suggest that allocation of burdens of proof are not issues of substantive law; indeed it appears relatively clear that they are. "In litigation, these prerequisites are determined ... by the substantive law." IX Wigmore on Evidence 273 (3d ed. 1940). *See* in another context *Cities Service Oil Company v. Dunlap*, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196 (1939).

**9.** In order to avoid rather than compound the confusion, for the balance of the Opinion I will distinguish between the two meanings of the term "burdens of proof" by describing the first as the burden of persuasion and the other as the burden of producing evidence.

have created an issue of fact to be decided by the jury. In a Title VII case, the allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." *Id.* As Wigmore describes this aspect of the burden of proof, it is the "duty of producing evidence to the judge." IX Wigmore on Evidence § 2487 (3d ed. 1940). "The treatment of the situation, and the operation of the rules, can best be comprehended by keeping this consideration in mind, namely, that the *opportunity to decide finally upon the evidentiary material that may be offered does not fall to the jury as a matter of course*; that each party must first with his evidence pass the gauntlet of the judge; . . . [i]n short, in order to get to the jury on the issue, and bring into play the other burden of proof (in the sense of the risk of non-persuasion of the jury), both parties alike *must first satisfy the judge that they have a quantity of evidence fit to be considered*, by the jury, and to form a reasonable basis for the verdict." *Id.* (emphasis in original). Because a plaintiff has the affirmative duty of proving each element of the cause of action, the burden of persuasion "never shifts" *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, and plaintiff has the initial burden of producing evidence. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). This principle derives from the ancient principle *affirmantis est probare* (one who affirms must prove). As I shall point out, this principle has a significant effect in the context of an equal pay case brought as a Title VII action. In such a case, unlike a conventional Title VII action, defendants bear the burden of proof (in both senses) as to certain affirmative defenses.

■ One further refinement aids in resolution of the issues tendered by this case. Although the courts have spent a considerable time in discussing what kind of evidence will suffice to shift the burden of producing evidence in Title VII cases, it is nonetheless clear that the standards of review of that evidence remain the same. *See Ruffin v. County of Los Angeles*, 607 F.2d 1276 (9th Cir. 1979). When the court confronts a motion for summary judgment in a Title VII case, the evidentiary issue is whether or not the moving party has demonstrated that there is no material issue of fact. That determination is made employing a standard requiring that the court draw "all permissible inferences properly to be drawn from the record . . . in favor of the non-moving party." *Ruffin v. County of Los Angeles*, 607 F.2d at 1279.[10] That is to say, the question presented by plaintiffs' motions for summary judgment is whether plaintiffs have met their duty of producing evidence and the defendants have not. In Title VII cases, as in all summary judgment motions, the court's task is the discovery of material disputes of fact, not their resolution. Of course, the court may also render what has come to be known as partial summary judgment. "If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing on the motion, . . . shall if practicable ascertain what material facts exist without substantial controversy . . . it shall thereupon make an order specifying the facts that appear without substantial controversy." Fed.R.Civ.P. 56(d).

■ We must now turn to the question of what facts are "material" within the meaning of Fed.R.Civ.P. 56. As I have noted above, a material fact is one that makes a difference in the litigation. Thus, to identify material facts one must turn to the substantive law. I now do so.

### III

### THE EQUAL PAY ACT AND TITLE VII

Plaintiff claims that although she and all female sales agents/trainees were doing the

---

10. Of course the absence of a material issue of fact will permit judgment for the moving party only if under those facts the moving party is entitled to judgment "as a matter of law." F.R. Civ.P. 56(c). *See also Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308, 1310 (9th Cir. 1977); *Stansifer v. Chrysler Motors Corp.*, 487 F.2d 59 (9th Cir. 1973).

same work as their male counterparts, by virtue of the method of setting the monthly minimum they were not compensated equally. This allegation implicates two statutes—Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Equal Pay Act, 29 U.S.C. § 206(d). In the Equal Pay Act Congress "added to section 6 of the Fair Labor Standards Act of 1938 the principle of equal pay for equal work regardless of sex." *Corning Glass Works v. Brennan*, 417 U.S. 188, 190, 94 S.Ct. 2223, 2226, 41 L.Ed.2d 1 (1974). The purpose of the Equal Pay Act was "to remedy what was perceived to be a serious and endemic problem of [sex based] employment discrimination in private industry." *County of Washington v. Gunther*, —— U.S. ——, ——, 101 S.Ct. 2242, 2249, 68 L.Ed.2d 751, 761 (1981) (quoting from *Corning Glass Works v. Brennan, supra*). To paraphrase the Supreme Court's explanation of the purpose of Title VII (by placing it in the sex discrimination context) "the objective of Congress in the enactment of Title VII is plain from the language of the statute. It was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of [male] employees over [female] employees." *Griggs v. Duke Power Co.*, 401 U.S. 424, 429–30, 91 S.Ct. 849, 852–853, 28 L.Ed.2d 158 (1971).

■ As the Supreme Court has recently explained, because of the late inclusion of sex as a prohibited category of discrimination under Title VII, and resulting concern about the relationship of Title VII and the Equal Pay Act, Congress adopted the so-called Bennett Amendment to Title VII. The amendment provided that "it shall not be an unlawful employment practice under this subchapter [Title VII] for any employer to differentiate upon the basis of sex in determining the amount of wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of Title 29 [the Equal Pay Act]." 42 U.S.C. § 2000e–2(h). *See County of Washington v. Gunther*, —— U.S. —— et seq., 101 S.Ct. 2242, 2249 et seq., 68 L.Ed.2d 751, 761 et

seq. (1981). As shall be seen, the adoption of the Bennett Amendment and its effect as explained in *County of Washington v. Gunther, supra*, has had "significant consequences" (*Id.* at U.S. ——, 101 S.Ct. at 2248, 68 L.Ed.2d at 760) upon suits where the claim is unequal pay for equal work and the action is pursuant to Title VII. *Gunther* teaches in effect two lessons. First, that a plaintiff may challenge "sex discrimination in compensation under Title VII." *Id.*, at ——, 101 S.Ct. at 2254, 68 L.Ed.2d at 767. Secondly, the effect of doing so is "merely to incorporate the four affirmative defenses of the Equal Pay Act into Title VII for sex-based wage discrimination claims." *Id.*, at ——, 101 S.Ct. at 2247, 68 L.Ed.2d at 759. The first consequence requires no explanation; the second effect, however, does.

In conventional Title VII litigation (i. e. non-equal pay cases), the proffering of admissible evidence tending to prove that the particular employer conduct complained of was the result of "a legitimate, non-discriminatory reason" such as business necessity, "rebut[s] the presumption of discrimination" created when a plaintiff has established a prima facie case. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Accordingly, under the reasoning of Part II, above, the introduction of such evidence is a material fact and would defeat a motion for summary judgment. As I shall now explain, however, the consequences of the adoption of the Bennett Amendment, as interpreted by the Supreme Court in *Gunther*, requires a different analysis.

■ Critical for our concerns here is the repeated recognition by both the Court and dissent in *Gunther* that the four conditions of non-liability in the Equal Pay Act are "affirmative defenses." *See, e. g.,* —— U.S. at pp. ——, ——, ——, —— n.7, ——, 101 S.Ct. at pp. 2247, 2248, 2249, 2261 n.7, 2262, 68 L.Ed.2d at pp. 759, 760, 761, 776 n.7, 778. This characterization is hardly surprising since they were so characterized

in the Supreme Court's first equal pay case. *See Corning Glass Works v. Brennan,* 417 U.S. 188, 196, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974). While not surprising, such a characterization results in a shift in the burden of proof (in both senses). An affirmative defense is "new matter, which, assuming the complaint to be true, constitutes a defense to it." Blacks Law Dictionary, 55 (5th ed. 1979). It is of course the general rule that "affirmative defenses inferentially carry the burden of proof," 1A Moore's Federal Practice, ¶ 0.314[2], since *affirmanti, non neganti incumbit probatio* (the burden of proof lies upon the one who affirms, not upon one who denies). Indeed, the Supreme Court has held that as with most affirmative defenses the employer bears the burden of the affirmative defenses in an Equal Pay Act case. "[O]nce [the plaintiff] has carried his burden of showing that the employer pays workers of one sex more than workers of the opposite sex for equal work, the burden shifts to the employer to show that the differential is justified under one of the Act's four exceptions ... this view is consistent with the general rule that the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense upon which the employer has the burden of proof." *Corning Glass Works v. Brennan, supra* at 196–97, 94 S.Ct. at 2229.

The Supreme Court has pointed out, "the Equal Pay Act is divided into two parts: a definition of the violation, followed by four affirmative defenses." *County of Washington v. Gunther,* —— U.S. ——, ——, 101 S.Ct. 2242, 2248, 68 L.Ed.2d 751, 760 (1981). Thus applying traditional modes of analysis of burdens of proffering evidence and persuasion, we look to the first part of the Act "a definition of the violation" to determine what plaintiff's burden of persuasion and proffering evidence is, and to the second part of the Act—the "four affirmative defenses" to determine the defendant's burdens of persuasion and proffering evidence. As I have noted, in conventional Title VII litigation where plaintiff has proffered evidence of a prima facie case, and the defendant responds with ad-

missible evidence tending to prove that a particular employer conduct complained of was the result of a "legitimate, non-discriminatory reason" such as business necessity, "that evidence rebuts the presumption of discrimination." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The burden then shifts to the plaintiff to proffer evidence "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 1093. That is to say that the burden rests with the plaintiff throughout the proceedings to produce evidence and to persuade that the cause of the differentiated treatment is discriminatory in nature. Because the burden "never shifts," defendant's proffering of a business "defense" is merely grist in the mill for the trier of fact's determination of whether or not plaintiff has proved the kind of discrimination prohibited by Title VII. Such, however, is not the case where the Title VII action involves pay differentials.

The very language of the Equal Pay Act suggests that the Court is confronted with a different question in equal pay cases. The statute prohibits discrimination "by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex. . . ." 29 U.S.C. § 206(d)(1). That is, the discrimination that is prohibited is the payment of a lesser rate, whatever the reason. I recognize, of course, that the Court differentiated between equal pay cases and conventional Title VII discriminatory impact cases by noting that "The fourth affirmative defense of the Equal Pay Act, however, was designed differently, to confine the application of the Act to wage differentials attributable to sex discrimination." *County of Washington v. Gunther,* —— U.S. ——, 101 S.Ct. 2242, 2248, 68 L.Ed.2d 751, 760 (1981). Read carelessly, these lines might appear to require that the plaintiff prove as part of her cause of action that the differential was "attributable to sex discrimination." Such a reading, however, misconstrues where the

burden of persuasion lies for an affirmative defense, and the Court itself demonstrates where the burden lies in the very next sentence. "Equal Pay Act litigation, therefore, has been structured to permit employers *to defend* against charges of discrimination where their pay differentials are based on a bona fide use of 'other factors other than sex.'" *Id.*, at ———————, 101 S.Ct. at 2248, 68 L.Ed.2d at 760–61 (Emphasis added).

Consistent with the statutory language then, plaintiff establishes her liability case by proffering evidence and persuading the trier of fact that she is paid less than men doing the same work. Once the plaintiff has done so, defendant must then shoulder its burden of proffering evidence and persuading the trier of fact that the unequal pay is an "authorized differentiation", that is one permitted by the Equal Pay Act.

The above analysis of the structure of a trial of an unequal pay for equal work claim under Title VII also illuminates the task of the judge in considering a motion for summary judgment in equal pay cases as contrasted with other Title VII litigation. As noted, in a non-compensation Title VII case the burden of persuasion that the cause of disparate treatment is motivated by an invidious discriminatory intent lies with the plaintiff and "never shifts." Thus, under the analysis in Part II, above, any admissible evidence proffered by the employer on that issue creates a "material issue of fact" requiring trial for its resolution and the motion must be denied.

In an equal pay case, on the other hand, because defendant bears the burden of persuasion on the affirmative defenses, under the analysis in Part II a different analytical procedure is required. Where plaintiff seeks to demonstrate that she is receiving unequal pay for equal work, she is entitled to summary judgment on that issue independent of the existence of a material issue of fact relative to one of the four affirmative defenses.[11] Defendant may proffer evidence that the pay is equal or the jobs are not. For purposes of partial summary judgment, however, if defendant fails to proffer such evidence plaintiff is entitled to a determination that no trial is required on the issue of equal pay for equal work. Either the plaintiff is or is not receiving equal pay for equal work. In the event that defendant proffers admissible evidence of an affirmative defense, a material issue of fact is raised as to the defense only and it is the defense only which is tried. If a defendant fails to proffer admissible evidence concerning an affirmative defense, plaintiff is entitled to summary judgment on the issue of liability and the parties are left to try damages. As to damages, under the analysis in Part II, plaintiff bears the burden of proof. With this analytical mode in mind I now turn to the question of summary judgment in this case.

## IV

## ANALYSIS OF THE FACTS

### A. *Plaintiff Kouba*

The first issue which must be resolved is whether there is any material dispute concerning whether plaintiff was performing the same work as men but receiving less pay. Two questions are presented—was plaintiff performing the same work and, was plaintiff receiving the same pay? Two periods are also implicated—the training period and the field period.

It is undisputed under the documents before the Court that all trainees during the training period did the same work. It is also apparently uncontested that the monthly minimum was the only compensation any trainee received. Kouba asserts, and the assertion is apparently uncontested, that during this period her monthly minimum was $825.00 per month whereas most of the men she was working with received $1,000 per month. *See* Kouba deposition, p. 15:9–12; 15:19–25 and 24:3–5. It thus ap-

---

11. This assumes that the gravamen of the action is a true equal pay case and not a "comparable pay" case.

pears, and I find that it is "without substantial controversy," Fed.R.Civ.P. 56(d), that the plaintiff received less pay than men performing the same work during the training period.

The issues concerning plaintiff's compensation once she was transferred to the field are somewhat more complex and more subtle. Although it is clear that plaintiff's "monthly minimum" continued to be less than that of the men she worked with, the issue is whether the monthly minimum was a "wage" within the meaning of the Equal Pay Act. As noted, Allstate's agents, once they are in the field, are compensated under an agreement which is related to productivity, the monthly minimum simply represents a floor. Query then whether at this stage the monthly minimum constituted "wages" within the meaning of 29 U.S.C. § 206(d)(1).

 Three sources convince me that the monthly minimum constitutes wages: the "plain meaning" of the statute, precedent, and the interpretation of the Department of Labor. The statute uses the word "wages." While it may appear that the plain meaning of "simple English words" (*United Association of Journeymen v. Local 334,* —— U.S. ——, 101 S.Ct. 2546, 2553, 69 L.Ed.2d 280 (1981) (Burger, C. J., dissenting) may be as with beauty in the eye of the beholder, resort to the dictionary seems "plainly" to require inclusion of the monthly minimum within the meaning of the word "wages." Webster's Unabridged Third defines the word to mean "A pledge or payment, usually monetary remuneration by an employer especially for labor or services ... and often including bonus, commissions...." Clearly here, where plaintiff apparently never received a commission, for her it was her wage. For the men involved it is clear that under this definition the monthly minimum was also wages. Whether or not the men were receiving more money than plaintiff by virtue of commission earned for sales made, nonetheless the monthly minimum was "a pledge." Al-

though there is a dearth of cases interpreting the word "wages" under the Fair Labor Standards Act in this context, at least one case has interpreted the term so that it would clearly encompass the "monthly minimum" at issue here. *See Hodgson v. Robert Hall Clothes, Inc.,* 326 F.Supp. 1264, and especially at 1272 (D.Del.1971), *affirmed as modified,* 473 F.2d 589 (3d Cir. 1973). Finally, the Secretary of Labor has provided a definition of wages under which the monthly minimum would also be clearly encompassed. "The term wage rate ... also includes the rate at which a 'draw,' advance *or guarantee* is paid against a commission settlement." 28 C.F.R. 800.111 (Emphasis added.) It is of course well settled that the official administrative interpretations of the Fair Labor Standards Act, while not binding on the courts, are entitled to "great weight." *See, e. g. Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), and *see Hodgson v. Robert Hall Clothes, Inc., supra.* I thus conclude that the term "wages" encompasses the monthly minimum paid to the sales agents once they are in the field. I further conclude that as to this plaintiff, no substantial issue of material fact exists as to whether or not she was paid a lesser monthly minimum than her male counterparts—she was.

### B. *Class Determinations*

For reasons that are set out in a companion opinion, I have determined that the class should now be certified. I turn to the question of whether there are substantial issues of fact precluding partial summary judgment relative to whether or not women as a class were paid less than men as a class. The defendant argues that partial summary judgment is inappropriate since at least some women were paid more than some men, and that in any event the system of setting monthly minimums was benign because women as a class were paid more under the monthly minimum than at their last jobs. Those arguments are not persuasive.[12]

---

12. As I shall explain in an opinion to follow, the case may be pursued as a class action. How-

ever, the defendant will be free to prove that damages should not be awarded to any particu-

The statistical evidence presented by the plaintiff in this case unmistakably demonstrates that women as a class are paid a lesser monthly minimum than men. That fact is a violation of the plain terms of the Equal Pay Act. "No employer having employees ... shall discriminate, within any establishment in which such *employees* are employed, between *employees* on the basis of sex by paying wages to *employees* of the opposite sex...." 29 U.S.C. § 206(d)(1) (Emphasis added). If as the Court has taught us, Title VII's "focus on the individual is unambiguous," *Los Angeles Department of Water and Power v. Manhart*, 435 U.S. 702, 708, 98 S.Ct. 1370, 1375, 55 L.Ed.2d 657 (1978), by its terms the focus of the Equal Pay Act is on the employers' practices relative to the gender of his employees as a group.[13]

Thus it seems clear to me that it is sufficient to demonstrate a violation of the statute by showing that women as a group were paid less than men as a group for the same job. In reality, defendant is attacking the statistical method of demonstrating sex discrimination.

Although the use of statistics in proving both a disparate treatment case (*see, e. g. Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)), and of course a disparate impact case (*see Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971)) is well recognized, the parties have not pointed to, nor has my independent investigation found, any case which specifically approves or disapproves the use of statistical evidence in a class action equal pay case. Nonetheless, it appears to the Court that the reasons that "the most significant development in employment discrimination law has been the dominant role that statistics have come to play in the trial of virtually all class actions," Schlei and

Grossman, *Employment Discrimination Law*, 1161 (1976), are applicable to equal pay cases. As the authors of that text point out, the heavy reliance on statistical evidence in class action employment discrimination cases is almost inevitable because "such evidence may sometimes provide 'the only available avenue of proof,' since discrimination 'will seldom be admitted by any employer.' Thus, 'statistics often tell much, and Courts listen.'" (fns. omitted). *Id.* at p. 1162. As the Supreme Court said "our cases make it unmistakably clear that '[s]tatistical analyses have served and will continue to serve an important role' in cases in which the existence of discrimination is a disputed issue [citations omitted]." *Teamsters v. United States*, 431 U.S. at 339, 97 S.Ct. at 1856. Of course it goes without saying that the statistics must be pertinent, *Hazelwood School District v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977), and the defendant is free to offer statistics or to rebut plaintiff's statistical evidence. Nonetheless, where statistics are the only evidence proffered and they are pertinent and unrebutted, they are sufficient to support judgment. I conclude that there is no reason to distinguish between equal pay cases and other Title VII cases in this regard.

It is also clear that though the defendant is more generous to its women employees than were previous employers of those women, that fact is entirely irrelevant to the issue of unequal pay for equal work. Again, the plain terms of the statute dispose of the issue. The employer is prohibited from discriminating between its employees whatever other employers have done. Although this issue arises again in terms of the affirmative defenses (*see* Part V, infra), it simply has no bearing on the question of whether the employer has paid its employees who are female less than its male em-

---

lar class member who is unable to show that she received unequal pay for equal work.

**13.** Of course, just as Title VII's focus on the individual does not preclude liability for a violation of the statute by employer action which invidiously discriminates on a group basis (i. e.

the typical "disparate impact" case), the Equal Pay Act's emphasis on the gender of employees as a group does not preclude a particular woman from demonstrating that she, as contrasted with women employees as a group, was discriminated against on the basis of sex.

ployees for equal work. In like fashion the fact that the statistics demonstrate that the monthly minimum paid women as a group was higher than their previous salaries while men's salaries were lower does not appear relevant. While this practice narrowed the differential, it did not close it. The statute requires that there be no differential.

In essence the defendant does not dispute the statistics. As I have noted, however, Allstate does raise questions as to its motivation. For the reasons set forth above, it is my view that the "motivation" question is in reality a question of the affirmative defenses available to an employer and thus will be considered below. Accordingly I find that there is no substantial material issue of fact as to the class—the defendant paid women less than men for equal work. I now turn to the question of the affirmative defenses.

## V

### THE AFFIRMATIVE DEFENSES

■ I have noted that my own analysis puts the burden of going forward at trial as to the affirmative defenses upon the defendant. A plaintiff may, of course, test the sufficiency of a defense by motion for summary judgment, 10 Wright & Miller, *Federal Practice and Procedure* § 2734. Where plaintiff seeks summary judgment on the question of liability, the plaintiff must initiate the inquiry by demonstrating that there is no material fact in issue as to the affirmative defense and that it is insufficient as a matter of law. *Id.* When such a motion is made and supported by an adequate affidavit "an adverse party may not rest upon the mere allegation or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." F.R.Civ.P. 56(e). That is to say, when plaintiff moves for partial summary judgment on a pled affirmative defense the plaintiff has the initial burden of producing evidence, but once that burden is discharged the defendant must produce evidence or plaintiff is entitled to partial summary judgment.

In the instant case defendant has, in effect, pled that its conduct falls within one of the four affirmative defenses provided employers in the Equal Pay Act. Defendant does not claim that the differential plaintiff has demonstrated as to the monthly minimum is the result of either a seniority system, merit system, or a system which measures earnings by quantity or quality of production. Rather, defendant asserts that the differential is based upon "other factors other than sex." 29 U.S.C. § 206(d)(1). Here again the issue is relatively narrow. Plaintiff concedes that defendant has succeeded in raising material issues of fact as to three of the four factors utilized by Allstate in setting the monthly minimum, namely ability, experience and education. Nonetheless plaintiff asserts that Allstate's application of the "current salary situation" is as a matter of law prohibited, that there is no issue that the current salary situation was utilized in setting the monthly minimum and, accordingly, was a factor in setting wages and thus plaintiff is entitled to summary judgment on the issue of liability.

Analytically, two questions are presented. First, is the utilization of the "current salary schedule" factor prohibited as a matter of law? Second, if so, where defendant used mixed criteria, some of which are lawful and one unlawful, is plaintiff entitled to summary judgment?

### A. *Utilization of a Current Salary Schedule*

As noted above, the term "current salary schedule" is descriptive of a factor utilized by Allstate in setting its salary schedule. The phrase is interpreted to mean the last salary received by a new employee prior to employment at Allstate. The statute itself speaks of "any other factor other than sex." The question that is presented is whether the utilization of the prior salary of an applicant is a factor other than sex.

■ Plaintiff concedes that the current salary schedule does not, by its terms, discriminate on the basis of sex. Nonetheless,

she points to the historical fact that women were paid less than men and argues that permitting such a factor "freezes" the prior discriminatory affect upon women and thus argues that the differential is in fact based upon sex. The Supreme Court has taught that for equal pay purposes a practice is unlawful "though phrased in terms of a neutral factor other than sex, [which] nevertheless operated to perpetuate the effects of the company's prior illegal practice of paying women less than men for equal work." *Corning Glass Works v. Brennan*, 417 U.S. at 209–210, 94 S.Ct. at 2235–2236. Moreover, it appears clear that it is not merely an employer's past illegal practices which will make the present practices unlawful. A resort to a so-called "market rate" where the market rate is itself a reflection of the historical discrimination against women will not be considered as a sufficient justification under the Equal Pay Act. *See, e. g. Hodgson v. Brookhaven General Hospital*, 436 F.2d 719 (5th Cir. 1970), *and see Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Brennan v. Victoria Bank and Trust Company*, 493 F.2d 896, 902 (5th Cir. 1974); *Di Salvo v. Chamber of Commerce of Greater Kansas City*, 416 F.Supp. 844, 853 (D.Mo.1976), *aff'd as modified* 568 F.2d 593, 597 (8th Cir. 1978); *Hodgson v. Maison Miramon, Inc.*, 344 F.Supp. 843 (E.D.La.1972). As plaintiff argues, the cases relied upon by the defendant to the contrary are not apposite. In those cases either the utilization of prior salary in setting compensation was not at issue (*e. g. Pantchenko v. C.B. Dolge Company, Inc.*, 18 FEP Cases 686 (D.Conn.1977), *aff'd in part* 581 F.2d 1052 (2d Cir. 1978) and *EEOC v. Aetna Ins. Co.*, 616 F.2d 719 (4th Cir. 1980)), the plaintiff had failed to prove equal work (*Horner v. Mary Institute*, 613 F.2d 706 (8th Cir. 1980)), or they are in so-called "comparable work cases" (*Christensen v. Iowa*, 563 F.2d 353, 356 (8th Cir. 1977)).

The Secretary of Labor also has interpreted the Equal Pay Act to prohibit "market rate" justifications. Wage differentials which "perpetuate and promote the very discrimination at which the Act is directed" will not withstand Equal Pay Act analysis. *See* 29 C.F.R. 800.151. Although the Secretary's regulations speak of "grouping according to sex," the mere phrasing of a factor in neutral terms will not save a pay schedule which perpetuates discriminatory pay practices. *Corning Glass Works v. Brennan*, 417 U.S. at 209–10, 94 S.Ct. at 2235–2236.

It appears that the Supreme Court has limited the application of the fourth affirmative defense to a "bona fide job rating system," *County of Washington v. Gunther*, —— U.S. ——, ——, 101 S.Ct. 2242, 2249, 68 L.Ed.2d 751, 761 (1981), and thus where the jobs are "rated" the same, unequal pay cannot be justified on the basis of "other factors other than sex." As *Gunther* points out, the legislative history of the Equal Pay Act suggests that "the earlier versions of the equal pay bill were amended to define equal work and to add the fourth affirmative defense because of a concern that bona fide *job evaluation systems* used by American businesses would otherwise be disrupted." (Emphasis added) *Id.* at n. 11. Here, of course, we do not deal with a job evaluation system at all. All concede that it is the same job. On the contrary, we deal with a system of discrimination in salary within the same job classification.[14] Indeed, this issue appears to have been foreclosed by the high court itself. The Supreme Court apparently has recognized that a pay differential based upon women's willingness to work for less money is itself simply unlawful. *Corning Glass Works v. Brennan*, 417 U.S. at 206, 94 S.Ct. at 2233.

Decisions on analogous issues also suggest that the use of prior salary for purposes of setting a new salary cannot be considered as a bona fide other factor other than sex. In *Los Angeles Department of Water and*

---

14. Of course, this is not to intimate that as to employment within a job classification an employer may not discriminate on the basis of seniority, a merit system or production within a given job classification.

*Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), the Court considered whether a cost justification defense was available to the employer. There, a sex based differential in its retirement program was actuarily justified. Nonetheless the Court rejected a cost defense noting that "[d]efenses under Title VII and the Equal Pay Act are considerably narrower. A broad cost-differential defense was proposed and rejected when the Equal Pay Act became law . . . [t]he Equal Pay Act's supporters responded that any cost differences could be handled by focusing on the factors other than sex which actually caused the differences, such as absenteeism or number of hours worked. The amendment was rejected as largely redundant for that reason." 435 U.S. at 717, n. 32, 98 S.Ct. at 1380, n. 32. Here, in like manner, if the prior pay were the result of a factor other than sex (e. g. jobs with lesser responsibility, shorter hours, etc.), there could be little doubt that defendant had raised a material issue of fact concerning the propriety of the utilization of this factor. Unfortunately for defendant the evidence before this court demonstrates that defendant never evaluated the prior job responsibility, hours, or the like for the purpose of determining whether the prior salaries paid were based upon factors other than sex. Plaintiff, on the other hand, has tendered evidence relating to the historical disparity. As I have noted, at trial defendant bears the burden of producing evidence *and* persuasion on the affirmative defense. Here, on plaintiff's motion defendant must meet its burden of producing evidence—it simply has not produced any evidence that the differential is based upon other factors other than sex. I am forced to conclude, as the Supreme Court did in citing with approval Judge Dunaway's observation, that one cannot say that this factor "based entirely on sex is 'based on any other factor other than sex.' Sex is exactly what it is based on." [citation omitted] *Los Angeles Department of Water and Power v. Manhart*, 435 U.S. at 713, 98 S.Ct. at 1377. As the Supreme Court noted in the footnote following the passage quoted, it is this failure to distin-

guish between the reasons underlying the distinction between men's previous pay and women's previous pay which is fatal for it is only non-gender based differentials "that the Equal Pay Act intended to authorize." *Id.* at n.24.

 Although the issue is not without its difficulties, it thus appears to me that as a matter of law an employer may not set a salary schedule which differentiates between its male and female employees doing the exact same job, based upon the immediate past salaries paid to the men and women, unless it can demonstrate that it has assessed the previous salaries and determined that they themselves were set on "other factors other than sex." In the absence of the proffering of such evidence, as a matter of law because of the "endemic problem" (*County of Washington v. Gunther*, —— U.S. ——, at ——, 101 S.Ct. 2242, at 2248, 68 L.Ed.2d 751, at 761) of sex discrimination, the practice does not equate with "any other factor other than sex" and thus is not an affirmative defense sufficient to defeat plaintiff's demonstration that she is doing equal work but being paid less money.

While at first blush this appears to put a significant burden upon subsequent employers, I must point out that in this particular case no such burden exists. In fact, defendants in this case did routinely contact previous employers to ascertain information concerning plaintiff's previous employment. The effect of this holding is simply to require the employer to ascertain one more piece of information in the course of determining the appropriate "monthly minimum." This is not to suggest that a prospective employer must undertake an independent investigation of a previous employer's practices whenever a new employer desires to use previous salary as a factor in fixing compensation. Though given the purposes of the Equal Pay Act employers might be wise to eschew such a factor, it nonetheless appears that such a factor could properly be used where the previous salary was itself related to a factor other than

sex.[15] For all of the above reasons, I find that there is no material issue of fact as to the affirmative defense. It is undisputed that the employer utilized the previous salary as a component in fixing the monthly salary without ever ascertaining whether or not the previous salary was itself based upon factors other than sex.

Defendant has a fallback position. It argues that conceding all the above, nonetheless four factors were utilized and plaintiff cannot demonstrate that the particular factor which she complains of was itself the factor which resulted in the monthly minimum for women being lower than that paid men.

B. The Effect of a Single Unlawful Factor Utilized in a Multiple Factor System in Setting Compensation.

Defendant has proffered affidavits from a series of regional managers and district managers setting forth the method of establishing the monthly minimum, and emphasizing the close interrelationship of all of the factors. The question is thus tendered as to whether or not the evidence demonstrating a complex interwoven evaluation system is sufficient to raise a material issue of fact as to whether the differentiation is gender based or based on these other factors other than sex.

The statute prohibits unequal pay for equal work "except where *such* payment is made pursuant to . . . (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). The phrase "such payment" would appear to require that the entire differential must be based upon a factor other than sex. This reading has been adopted by the Secretary of Labor: "While differentials in the payment of wages are permitted when it can be shown that they are based upon [one of the four affirmative defenses], the requirements for such an exception are not met unless the factor of sex provides *no part* of the basis for the wage differential." 29 CFR 800.142 (emphasis added). *See* also § 29 CFR 800.-143.

Both plaintiff and defendant rely upon Title VII cases. Plaintiff particularly relies upon *Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). Although it is clear to me that plaintiff has the better part of the argument as to a Title VII impact case, nonetheless it is unclear whether conventional Title VII cases are authoritative when an equal pay action is brought as a Title VII action. In the Ninth Circuit's version of *Gunther* the Court explained that "decisions interpreting the Equal Pay Act are authoritative where plaintiffs suing under Title VII raise a claim of Equal Pay." *Gunther v. County of Washington*, 623 F.2d 1303, 1313 (1979). This Court has been able to find only one other case which deals with this issue in an equal pay context. That case citing the appropriate CFR held that "the requirements for such an exception are not met unless the factor of sex provides no part of the basis for the wage differential." *Marshall v. J.C. Penney Co., Inc.*, 464 F.Supp. 1166, 1195 (N.D.Ohio 1979). Although the matter is uncertain, I conclude that the Secretary is correct and an affirmative defense under the Equal Pay Act is not made out unless defendant can demonstrate that the entire wage differential is based upon "other factors other than sex." A close examination of the affidavits proffered by the defendant demonstrates that quite the contrary is true. The effect of the affidavits is to demonstrate that the previous salary was a factor utilized in a mix of factors and it is in effect impossible to distinguish between what portion of the differential was related to the prohibited factor and what was related to factors which might otherwise qualify as "other factors other than sex." On this basis I determine that there is no material issue of

---

15. Although not at all necessary for this Opinion I do think it proper to point out that a prospective employer need not undertake a massive investigation of a previous employer's practices. In the absence of reasons to do otherwise, a subsequent employer may rely upon the information acquired from the previous employer concerning that employer's practices just as he relies upon that employer's information concerning other aspects of the prospective employee's history.

fact which supports defendant's allegations of an affirmative defense.

## CONCLUSION

For all of the above reasons, I have determined that plaintiff is entitled to summary judgment on liability. Of course, the parties are left to litigate the issue of damages.

The parties have requested that whichever way the Court rules, the matter be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). I believe that this decision involves a controlling issue of law as to which there is a substantial ground for difference of opinion and an immediate appeal from this Order may materially advance the ultimate termination. Accordingly I have determined that the Order falls within the purview of 28 U.S.C. § 1292(b) and so certify.

IT IS SO ORDERED.