673 P.2d 916

Ann Lewis HIGDON, formerly Marilee Ann Lewis, Plaintiff/Appellee,

v.

EVERGREEN INTERNATIONAL AIR-LINES, INC., an Oregon corporation doing business in the State of Arizona, Defendant/Appellant.

No. 2 CA–CIV 4281.

Court of Appeals of Arizona, Division 2.

Nov. 19, 1982.

Rehearing Denied March 1, 1983.

Review Granted April 19, 1983.

Bolding & Zavala by Michael O. Zavala, Tucson, for plaintiff/appellee.

Lewis & Roca by John P. Frank and Richard S. Cohen, Phoenix, for defendant/appellant.

## OPINION

BIRDSALL, Judge.

This is an appeal from the trial court's decision that the appellee, Ann Lewis Higdon, should have been paid the same salary as a male employee when she succeeded to his position with the appellant, Evergreen International Airlines, Inc. The case was tried to the court without a jury. Findings of fact and conclusions of law were requested and made. Rule 52, Rules of Civil Procedure, 16 A.R.S. We reverse with directions to enter judgment for the appellant.

This action was brought under the Arizona Civil Rights Act, A.R.S. §§ 41–1401, et seq. A.R.S. § 41–1463 provides in part that it is an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation because of such individual's sex. A.R.S. § 41–1463(B). This statutory provision has as its federal counterpart 29 U.S.C. § 206(d)(1) which, in addition to containing substantially this same prohibition, recognizes certain exceptions:

"... where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earning by quantity or quality of production; or (iv) *a differential based on any other factor other than sex* ..." (emphasis supplied)

This provision of the federal Equal Pay Act is incorporated by reference in the Arizona Act. A.R.S. § 41–1463(H). We are concerned here with the fourth exception.

The appellee was employed as the secretary-assistant to the male director of passenger services, Gary Williamson, when he resigned in February 1978. She was then earning $500 per month,[1] Williamson's salary then was $1183. She replaced him at a salary of $700 and continued to work for

1. All salary references unless otherwise noted are monthly.

the appellant in that position with one $56 raise until August 1979 when she left the employment. Thus, if the evidence does not show that the salary differential comes within one of the exceptions enumerated and she did succeed to the same position, a case of sex discrimination was established. She should have been paid equally for equal work.

The thrust of the appellant's arguments are that the position occupied by the appellee was not substantially equal in terms of skill, responsibility and effort to the position held by Williamson, and that the pay differential was based on a factor other than sex, to-wit, experience. The appellant identifies three questions on appeal. It contends:

I. The superior court applied incorrect legal principles in holding that experience cannot justify salary differentials if the work involved is capable of being learned by observation and practice.

II. The superior court applied incorrect legal standards in concluding that plaintiff's position was substantially equal, in terms of skill, responsibility and effort, to the position previously held by the male director of passenger services.

III. The superior court clearly erred in finding that plaintiff's position was substantially equal, in terms of skill, responsibility and effort, to the position previously held by the male director of passenger services.

We reverse because of the first contention of error. The following facts are pertinent to our disposition of this appeal.

Evergreen was a small commercial airline in Marana, Arizona, when Williamson was first hired as a salesman in its marketing operations in January 1976. He became its marketing manager and was paid approximately $1100. At that time, and for about one year after, the company had approximately 50 employees. When Williamson left in 1978, there were over 250 employees. As the business grew it became necessary to create a passenger service department and

Williamson was made its director in January 1977 at his same salary. Generally the purpose of this department was to manage all of the necessary services relating to the convenience and comfort of the passengers. Evergreen's passenger business was charter flights which required it to have "station managers", either employed or by contract, in most of the terminals which it used. This involved hiring, training and supervising these individuals, securing office space and related equipment, selecting and contracting with other companies performing these services at the terminals. Providing meals, lodging, entertainment and activities was another responsibility. The marking and handling of luggage was also a concern of the department. Quality control of these services was maintained by the department.

The director of passenger services was required to travel extensively to the various terminals to perform these responsibilities. Customer problems and complaints were received and adjusted by the department. No job description was ever formally adopted and the evidence indicates the department had to be prepared to satisfy new and different demands as they arose. The trial court made no finding which attempts to describe the position. However, the court did find that it was a job which did not require any specialized training or education and that it could be learned by observation and practice. We observe, since it is appropriate here, that the position of corporate president could also be learned by observation and practice. Another finding of fact was that "[t]he work performed by the [appellee] and her male predecessor was substantially equal in the sense of requiring the same skill, effort and responsibility." If these findings are not clearly erroneous we are obliged to accept them. Rule 52(a), Rules of Civil Procedure, 16 A.R.S.; *Rossi v. Stewart*, 90 Ariz. 207, 367 P.2d 242 (1961).

The appellant contends, however, that the superior court applied incorrect legal principles in holding that experience cannot justify salary differentials if the work involved

is capable of being learned by observation and practice.

This contention stems from the following two conclusions of law made by the trial court:

9. Under the Equal Pay Act, the determining factor of whether there has been a violation is whether the nature of the job, taken as a whole, requires additional training, skill or education asserted as justification for disparate salaries.

10. Education or past work experience do not establish a justification for disparate salaries if the work is such that it is capable of being learned by observation and practice without specialized education or experience.

The appellant argues that the trial court has ignored completely the affirmative defense which it urged, i.e., that as an exception under the Equal Pay Act, the male predecessor was paid more because of his experience in the airline and travel business. The evidence clearly established, and the appellee does not seriously question, that Williamson had many, many times more experience in related employment than the appellee. This employment history showed that for some 11 years he had held various positions with Continental Airlines, beginning as a customer service representative and ending as sales manager in a three-state area. Much of his work was in the area of customer services. After that he held two different positions as a travel agency manager and was a sales manager for Grayline Tours in Oregon. On the other hand, except for her experience with Evergreen, the appellee's only related work experience was six months as a stewardess in 1963.

We agree with the appellant that wage differentials can be based on experience without violating the equal pay law. Experience is a factor which may come within the broad general exception in 29 U.S.C. § 206(d)(1)(iv) as a differential based on any other factor other than sex. *Equal Employment Opportunity Commission v. Aetna Ins. Co.,* 616 F.2d 719 (4th Cir.1980);

*Strecker v. Grand Forks Cty. Soc. Serv. Bd.,* 640 F.2d 96 (8th Cir.1980); *Horner v. Mary Institute,* 613 F.2d 706 (8th Cir.1980). *See also Padway v. Palches,* 665 F.2d 965 (9th Cir.1982). We do not agree with the appellee that experience has been eliminated as an acceptable factor under this broad general affirmative defense. Even the principal decision cited by the appellee, *Kouba v. Allstate Ins. Co.,* 523 F.Supp. 148 (E.D.Cal. 1981), recognizes this. *Kouba,* however, has recently been reversed on other grounds by the Ninth Circuit Court of Appeals. *Kouba v. Allstate Ins. Co.,* 691 F.2d 873 (9th Cir. 1982).

The appellee relies on a passage in the first *Kouba* opinion which states:

"It appears that the Supreme Court has limited the application of the fourth affirmative defense to a 'bona fide job rating system,' *County of Washington v. Gunther,* 452 U.S. 161, 171, 101 S.Ct. 2242, 2249, 68 L.Ed.2d 751, 761 (1981), and thus where the jobs are 'rated' the same, unequal pay cannot be justified on the basis of 'other factors other than sex.' As *Gunther* points out, the legislative history of the Equal Pay Act suggests that 'the earlier versions of the equal pay bill were amended to define equal work and to add the fourth affirmative defense because of a concern that bona fide *job evaluation systems* used by American businesses would otherwise be disrupted.'" *Kouba v. Allstate Ins. Co.,* 523 F.Supp. 148, 161 (E.D.Cal.1981).

The *Kouba* court has misread *Gunther.* Referring to the fourth affirmative defense the *Gunther* opinion, citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974), says: "Equal Pay Act litigation, therefore, has been structured to permit employers to defend against charges of discrimination where their pay differentials are based on a bona fide use of 'other factors other than sex.'" *County of Washington v. Gunther,* 452 U.S. 161, 170, 101 S.Ct. 2242, 2248, 68 L.Ed.2d 751, 760–61 (1981). This is a far cry from limiting the application of the fourth defense. The *Gunther* court goes on to say: "Under the

Equal Pay Act, the courts and administrative agencies are not permitted to substitute their judgment for the judgment of the employer ... who [has] established and employed a bona fide job rating system, so long as it does not discriminate on the basis of sex." *Gunther, supra,* at 171, 101 S.Ct. at 2248–49, 68 L.Ed.2d at 761. This reference to "bona fide job rating systems" is an obvious reference to *Brennan, supra,* wherein the Supreme Court examined closely job evaluation plans used extensively by industry, finding that the definition of equal work as contained in the Act included the generally accepted criteria of skill, effort, responsibility and working conditions. Wage differentials based on such job evaluations were permissible under the Act. Where jobs have been so evaluated, and different pay established for different jobs, so long as bona fide, such differential pay is not prohibited. *Brennan, supra,* explains that the desire of Congress to recognize industry-accepted job evaluation criteria resulted in the use of the following language in 29 U.S.C.A. Sec. 206(d)(1):

> "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions ...."

The Ninth Circuit Court of Appeals, in its *Kouba* opinion, did not agree with the lower court's limitation of the fourth affirmative defense to job-evaluation systems. It pointed out that Congress' concern about job-evaluation systems served as the impetus for creating the exception "any other factor other than sex" but did not limit the exception to that concern. Also that the "factor other than sex" exception would be surplusage if the exception is limited to the same four factors in the statutory definition of equal work.

In holding that experience may be a permissible factor under the fourth affirmative defense we are aware that the experience required for a job is a factor in determining the *skill* necessary for performance of that job. Skill required for performance is one of the factors considered in determining whether given jobs are equal. 29 U.S.C. Sec. 206(d)(1). *See also* the regulations promulgated by the U.S. Department of Labor in 29 C.F.R. 800.125: "Skill includes consideration of such factors as experience, training, education, and ability." This does not preclude paying greater compensation to a person with extensive experience in the very work involved even though such extensive experience is not necessary for the performance of the job. Thus experience related to the job may be a factor in evaluating the skill required and it may also be a factor in the compensation paid.

The two legal conclusions of the trial court are clearly erroneous. We have not been referred to any decision, nor have we found any, which holds that an employer cannot pay a higher wage to an employee in a supervisory position such as is involved here because that employee has additional training, or additional skill, or additional education. Nor have we seen any decision which holds that just because the work is capable of being learned by observation and practice without specialized education or experience, an employer cannot pay a higher wage to an employee who has education or past work experience related to the performance of that work as opposed to an employee who does not have such education or experience. Of course the experience must be related to the position. We do not suggest that because one has twelve years experience as a tight rope walker that experience can be considered in fixing his compensation as a bank loan officer. Likewise the other factor utilized must be bona fide and not merely a pretext for sex discrimination. It only makes sense that an airline employing a person as director of its customer services is entitled to consider whether the prospective employee has had previ-

ous experience in a similar position, and if so, to what extent. Surely the airline can pay more to a person with such extensive experience even though the work can be learned by observation and practice. Likewise, even though the job does not require previous experience, the airline can lawfully pay more to the person with such experience without being guilty of sex discrimination.

The only possible holding which remotely supports the trial court's conclusions is *Shultz v. Kimberly-Clark Corporation,* 315 F.Supp. 1323 (W.D.Tenn.1970). The court there concluded that the assembly line jobs involved were equal in skill because the work involved was capable of being learned by observation and practice without previous specialized education or experience. *But see Dunlop v. General Electric Company,* 401 F.Supp. 1353 (W.D.Va.1975). However, the court was considering the concept of experience only within the context of the claimant's burden of proving that the jobs at issue were substantially equal.

 The appellee argues that the position of director of customer services is comparable to the assembly line work involved in *Shultz, supra.* We observe first that this is contradictory of her other arguments which stress the responsibility of the position to which she was promoted. Secondly, the evidence of the tasks performed by Williamson belie this contention. Illustrative of these tasks were:

1) creating the passenger services manual;

2) traveling to airport facilities in which Evergreen was commencing operations and setting new operations into motion;

3) establishing Evergreen's station manager operations in New York City and in Detroit which involved interviewing and hiring individuals to handle Evergreen's business in those facilities and, in addition, contracting for office space that the company could use to accommodate spare parts and supplies;

4) contracting for ground handlers who would be responsible for handling Evergreen's new ground operations and coordinating those operations;

5) traveling from airport to airport to conduct training sessions on Evergreen's method of operations;

6) traveling to New York to establish military cargo operations and to Mexico to negotiate landing fees and fuel contracts, as well as to set up Mexican ground handling; and

7) purchasing equipment for Evergreen to set up aircraft for live animal charters.

Although some of these tasks involved cargo and most of them related to the creation of the department, they are representative of the nature of the responsibilities of the job which the appellee undertook to perform. Common sense tells us that previous related experience would be beneficial in the performance of tasks such as these.

 No evidence suggests that the hiring policies and procedure of Evergreen were tainted by any indication of the use of factors which would lead to disparate salaries on the basis of sex. Three persons were involved, one of whom was a woman. She was the company treasurer and according to the appellant's personnel director the number two person in the organization. The company had two female pilots, one of whom would soon become the first female "captain" on a commercial airline. Other responsible positions were also held by females.[2] In establishing an individual's com-

---

**2.** A female, Beth Westford, was employed to succeed the appellee on August 2 or 3, 1979. Her beginning salary was $1,350. Like Williamson she had extensive uninterrupted work experience in the airline and travel industry commencing in 1967 and continuing to the time of her employment with Evergreen. Most of her experience was in customer service. The appellee objected to evidence of her employ- ment for the reason that it was subsequent to the alleged discrimination in this case. The objection was overruled and the evidence that she was employed and paid this salary because of her experience was admitted. The appellant argues in its brief that this is further proof that it did not practice discrimination and that its employment policies included a consideration

pensation, Evergreen evaluated the person's abilities and what might be expected in terms of production. An applicant's past experience in the airline industry was deemed significant and was specifically considered. With respect to Williamson it was determined that he "fit the model of an individual capable of handling more than one task." We have already observed that he was not originally employed in customer service but moved into that newly-created department. He was charged with the complete organization of the department. Surely a small, growing company can employ persons at higher starting salaries knowing that the demands of their growth will require versatility in an employee's abilities.

■ The trial court made no findings pertaining to the affirmative defense urged by Evergreen. The defense was pleaded and included as an issue in the pretrial statement. Presumably this omission results from the two erroneous legal we have discussed. The evidence of the comparative experience of Williamson and the appellee Higdon is not contradicted. Likewise, the evidence that Williamson was paid more because of his experience is uncontradicted. The only direct evidence as to whether Higdon was paid less because of her sex is the denial of that reason by the president of Evergreen. As the Ninth Circuit so aptly stated in *Kouba:*

> "The Equal Pay Act entrusts employers, not judges, with making the often uncertain decision of how to accomplish business objectives." *Kouba v. Allstate Ins. Co.,* 691 F.2d 873 at 876 (9th Cir. 1982).

Since we are convinced that the record establishes that the salary differential was because of a factor other than sex we reverse and remand with directions to enter judgment for the appellant. In view of this disposition we need not consider the other issues raised on appeal.

Reversed and remanded with directions.

HOWARD, C.J., and HATHAWAY, J., concur.

---

of experience over and above that required for the job.

Although the appellee does not question the admissibility of this evidence in her answering brief or present this as a cross issue, her counsel, in oral argument, did contend that this court should not consider this evidence. Her counsel argues that the Westford hiring was not only subsequent to the alleged discrimination but also after the complaint had been filed with the civil rights division of the Arizona attorney general. The date of this filing does not appear in the appellate record. Even though the trial court admitted this evidence we do not know whether it was considered since the trial court is presumed to ignore evidence which should not have been admitted. We do not decide whether the evidence was admissible since the issue is not really before us and a consideration of this evidence is not necessary to our decision.